**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 20-81572 |
| | ) | |
| Randall C. Hall, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

The U.S. Trustee, as joined by several creditors, seeks to convert this chapter 11 case to chapter 7, where an independent case trustee can investigate, administer and liquidate the estate's assets for the benefit of creditors.  The Debtor does not seek to continue the case in chapter 11, but objects to conversion – instead arguing that creditors would be better served if the case were dismissed.  In particular, he argues that he will more vigorously and effectively pursue non-exempt claims asserted in state court litigation pending against his brothers than would a chapter 7 trustee.

The court finds that creditors will be better served by conversion.  Accordingly, the U.S. Trustee's motion will be granted and the case will be converted to chapter 7. The Debtor's request for dismissal will be denied.

## JURISDICTION

The matter before the court involves dismissal of a bankruptcy case or conversion of a bankruptcy case from one chapter of the Bankruptcy Code to another pursuant to section 1112 of the Bankruptcy Code.  It is therefore a matter arising under title 11 and arising in a case under title 11, within the jurisdiction of the

district court as provided by 28 U.S.C. § 1334(b).  Indeed, as the matter involves the issue of whether and how the bankruptcy case shall remain pending before the court, the matter is within the exclusive jurisdiction of the court over bankruptcy cases as provided by 28 U.S.C. § 1334(a). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This court has jurisdiction to decide this matter pursuant to the referral of all bankruptcy matters by the United States District Court for the Northern District of Illinois pursuant to its Internal Operating Procedure 15(a) and 28 U.S.C. § 157(a).

## FACTUAL AND PROCEDURAL BACKGROUND

The parties have declined the opportunity for an evidentiary hearing or to submit stipulations or affidavits in connection with the pending motion. Therefore, the court's determinations are based on the uncontested allegations raised in the papers and at argument and based on the docket for the bankruptcy case and adversary proceedings filed in the case, of which the court takes judicial notice. *See, e.g., Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993).

Debtor Randall C. Hall filed his chapter 11 petition on September 4, 2020.  He designated himself as not a small business debtor, meaning that the exclusive period for him to file a plan ran through January 2, 2021.  On January 24, 2021, the Debtor sought to impose deadlines for filing of proofs of claim. (ECF No. 94.)  The court granted the motion and set July 14, 2021 as the deadline for governmental claims

and June 14, 2021, for all other claims. (ECF No. 113.)[1]  To date, the Debtor has not filed a plan or disclosure statement.

The Debtor's initial monthly operating report for the period ending September 30, 2020, indicated that the Debtor at the end of that period had cash on hand totaling only $639.34. (ECF No. 39.)  Although his most recent operating report for the period ending April 30, 2022, lists his month-end cash balance to be $2,227, it also states that he held a cash balance as of the beginning of that month of only $22.  The Debtor's April 2022 report disclosed that the only receipts during the month were $5,500 for assets sold outside the ordinary course of business. (ECF No. 185.)

The U.S. Trustee filed its motion on April 14, 2022. (ECF No. 173, the "Motion to Convert.")  In it, the U.S. Trustee alleges that, among other things, notices mailed to the Debtor's address of record have been returned as undeliverable at least since January 5, 2022, and the Debtor had failed to pay quarterly fees to the U.S. Trustee for two quarters.[2]  On May 17, 2022, the debtor filed monthly operating reports for the calendar months of March and April 2022, as well as amended monthly operating reports for October, November and December 2021 and January and February 2021. (ECF Nos. 179-185.)  These reports state that the Debtor had no income or receipts at all in December 2021, February 2022, or March 2022, and only $22 in receipts in

---

[1] Prior to the deadline, the court entered several orders extending the time for Roland C. Hall, Richard C. Hall, Jr., Violet Hall, C.M. Hall & Sons, LLC, Lois Taylor and Joan Martin to file claims through February 28, 2022. (ECF Nos. 125, 135, 166, and 167.) Each of those parties filed claims on or before February 28, 2022, except C.M. Hall & Sons, LLC, which has not filed a claim.

[2] At the May 18, 2022, hearing on the Motion to Convert, the U.S. Trustee indicated that his concerns expressed in the motion as to lapse of a general liability insurance and vehicle insurance covering the Debtor's Ford F350 and Jayco Camper had been "addressed."

January 2022.  His other reports show no regular income, but receipts of $2,000 in October 2021, $17,000[3] in November 2021, and $5,500 in April 2022. In each case, the reports describe the receipts to be proceeds of the sale of assets not in the ordinary course of business. Despite the Debtor apparently receiving $19,000 in sale proceeds between October and November 2021, his monthly operating reports show that his cash had dwindled to $22 by the end of February 2022.  Nothing in the list of expense disbursements suggests that the Debtor used any of his cash to pay claims of pre-petition creditors or to increase or maintain the value of property of the estate available to pay claims. To the contrary, most if not all of the expense distributions listed in the monthly operating reports appear to be for the Debtor's personal living expenses.

The Debtor did not contest the factual allegations made by the U.S. Trustee in responding to the Motion to Convert. At the May 18, 2022, hearing on the motion, counsel for the Debtor acknowledged that the Debtor was no longer living at his listed address, living instead in a trailer.  His counsel further indicated that due to medical issues the Debtor was unable to work and had no way to generate income other than from the sale of assets.  Nevertheless, his counsel indicated his client's intent to file a liquidating plan together with a disclosure statement.

Rather than doing so, however, on June 2, 2022, the Debtor filed a response to the Motion to Convert requesting dismissal of the case. (Resp. ECF No. 191.)  At the

---

[3] The November 2021 report at one point describes the total receipts as "$11,029" but elsewhere describes receipts from sales as "$11,000" and all other forms of income as "$0," giving no explanation for the discrepancy.

June 6, 2022, continued hearing on the motion, the U.S. Trustee and creditors Holcomb Bank, Roland C. Hall, Richard C. Hall, Jr., and C.M. Hall & Sons, LLC, each objected to dismissal and the creditors joined the U.S. Trustee's request for conversion. At the June 6 hearing, counsel for the Debtor stated that not only was the Debtor living in a trailer and had not updated his address of record but that he had been outside the State of Illinois for approximately 30 days.

## DISCUSSION

The Debtor's principal argument rests on his contention that by farming several parcels of farmland with his brothers over the years, a partnership was formed by operation of law.  Thus, he claims to hold a right to a portion of the partnership, proceeds therefrom or property held by the partnership.  The Debtor asserted this claim in a pre-petition lawsuit against his brothers, *Randall Hall v. Roland C. Hall and Richard C. Hall, Jr.*, case no. 18 CH 34, in Ogle County, Illinois Circuit Court (the "Ogle County Case"), and reasserted many of the same claims in an adversary complaint he filed against his brothers, his mother and two aunts (Adversary Case No. 20-96042, "the Partnership Adversary") in this court.  On July 21, 2021, on the motion of the defendants in the Partnership Adversary, this court ordered that it would abstain from hearing the matter in favor of the Ogle County Case, and dismissed the Partnership Adversary without prejudice for the reasons set forth in the Memorandum Opinion issued then.

The Debtor concedes that his complaint in the Ogle County Case has been dismissed with prejudice.  However, he has appealed the dismissal order and now

argues he has strong grounds for its reversal.  In regard to the pending motion, the Debtor opposes conversion on his belief that, in his words, a "Chapter 7 Trustee, most likely, will not litigate the rights of the Debtor as asserted in the Ogle County State Court action, having few resources to pursue those rights." (Resp. ECF No. 191.)  In contrast, the U.S. Trustee and joining creditors contend that there are other assets available for liquidation to fund payments on claims or to fund litigation of the Ogle County Case if a chapter 7 trustee finds the matter to have merit.  On the other hand, if after investigation the chapter 7 trustee opts to abandon the Ogle County Case claim rather than pursue it, they argue, the Debtor will have the opportunity to pursue his claim post-abandonment.

Additionally, the joining creditors note that the defendants to the Ogle County Case have already made offers of settlement.  This means, they contend, that a chapter 7 trustee may be able obtain value for the estate from the claim without necessarily incurring the costs of full litigation.

1.  **"Cause" Under Section 1112 Exists.**

Section 1112(b)(1) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).[4]  That there is no dispute

---

[4] No party suggests a reason why the case should remain in chapter 11 – neither showing that appointment of a trustee or examiner in chapter 11 would be in the best interests of creditors and the estate, 11 U.S.C. 1112(b)(1), nor that there are "unusual circumstances" and "a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time," *id.* § 1112(b)(2).

that the Debtor has failed to pay U.S. Trustee's fees for at least two quarters is sufficient in itself to find cause for dismissal or conversion.  Section 1112(b)(4) provides a non-exhaustive list of what constitutes "cause" for dismissal or conversion, one of which is "failure to pay any fees or charges required under chapter 123 of title 28." *Id.* § 1112(b)(4)(K).  Additional cause is demonstrated by the Debtor's recent monthly operating reports showing his expenses vastly exceed any income, profits or new money (not attributable to sale of assets thereby leaving the estate) and his failure to make any showing that he is preparing to prepare and file a plan. His own schedules suggest what appears to be a "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," which also constitutes "cause." *Id.* § 1112(b)(4)(A).[5]  None of these points are seriously disputed. Rather the only issue in dispute for purposes of this motion is whether for purposes of section 1112(b)(2) it would be "in the best interests of creditors and the estate" to dismiss or convert this case.

2.  **Conversion Is in the Best Interests of Creditors and the Estate**.

Generally, once cause is found, the court "has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate." *In re 5431-33 S. Wabash LLC*, No. 18 B 12463, 2020 Bankr. LEXIS 3460, at *14 (Bankr. N.D. Ill. Nov. 16, 2020); *see also, e.g., In re Bartle,* 560 F.3d 724, 730 (7th Cir. 2009)

---

[5] Additionally, while not raised by the U.S. Trustee, but at least alluded to in the creditors' Joinder (ECF No. 193, ¶4), the docket reflects that the Debtor's monthly operating reports have not always been filed timely, and the Debtor has not sought extension or otherwise explained the delay.  As such, there would likely be "cause" under section 1112(b)(4)(F) for "unexcused failure to satisfy timely any filing or reporting requirement established by [the Bankruptcy Code] or by any rule applicable."

("The decision to dismiss a Chapter 11 proceeding pursuant to section 1112(b) is one committed to the court's discretion."). Courts have attempted to compile lists of factors or common circumstances to consider in applying this discretion. *See, e.g., Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 178 (B.A.P. 1st Cir. 2016). Generally, the most important factor is the comparison of the economic value of the estate and resultant distribution to creditors in or out of bankruptcy. *In re Aurora Memory Care LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018). Many courts have concluded that creditors are "best served by the course of action that results in the largest number of them being paid the largest amount of money in the shortest amount of time." *Id.* Thus, an especially important question is whether there are non-exempt assets in the estate with sufficient equity to make a distribution to creditors. For example, where there are no assets for a trustee to administer, dismissal will often be in the best interest of creditors and the estate, whereas when there are estate assets usually "conversion is the better course." *Id.*

The Debtor does not argue that he and his estate have no assets of value. To the contrary, in his response to the Motion to Convert he states his belief that his claims in the Ogle County Case are of substantial value. He does not suggest that he may exempt his rights in that action or other assets. Nor does he contend that his rights are fully encumbered by a single creditor such that the distribution purposes of bankruptcy would not be served. Instead, the Debtor argues that he is better-suited to pursue and maximize recovery by controlling the litigation outside of

bankruptcy than any case trustee could do.  He also rather dubiously contends that, if only released from the supervision and control of the bankruptcy system, he "is willing to continue to pursue the rights asserted in the appeal to maximize the recovery for the Debtor and his creditors." (Resp. ECF No. 191.)

The court has greater faith in the abilities of chapter 7 trustees to comply with their fiduciary duties to maximize the recovery for the estate.  A chapter 7 trustee is required to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).  Additionally, many of the activities of the trustee with respect to liquidation of assets are subject to court supervision with the right of parties in interest to object.  For example, Fed. R. Bankr. P. 9019(a) requires a motion with notice and hearing if the trustee wishes to settle the Ogle County Case.  If the Debtor believes that a proposed settlement is too low, resulting in the loss of a potential surplus to the Debtor, he can object at that time.

The court will not assume in advance that a yet-unappointed trustee will shirk his or her duties.  Even if, as the Debtor suggests, the estate would have insufficient resources to directly litigate when doing so is economically in the best interest of all creditors, the court will not speculate that a trustee would be helpless to pursue a responsible course of action.  The trustee may be able to find funding or special counsel willing to accept the engagement on a contingency basis. Creditors may agree to help fund the litigation, and the Debtor does not argue they would be less inclined

to do so simply because the trustee is directing the litigation. Or the Debtor himself might be able to support the trustee's litigation of the claim.[6]

On the other hand, full litigation – including all the risks it entails – may not be the best way to maximize the value of the claim on behalf of the estate. Nor is the Debtor's opinion unbiased in that decision. The Ogle County Case involves the Debtor's litigation against his brothers and his opinion that he was cheated out of what he deserved. As such, his decision-making may be influenced by emotion and animosity, at least as compared to an impartial and disinterested trustee. Additionally, since in bankruptcy the Debtor's right to return of a non-exempt surplus comes only after creditors' claims are paid in full – the remainder of which claims are normally discharged – the Debtor may have a greater willingness to gamble for a large recovery than would creditors, as the risk of loss may fall more heavily on creditors.

In addition, the Debtor's own inconsistent claims regarding his property interests also favor conversion rather than dismissal at this time. Contrary to the Debtor's assertion in response to the motion that a chapter 7 estate would have no

---

[6] The circumstances in this case are unlike those in *In re Green Box NA Green Bay, LLC*, where the court rejected a single creditor's objection to dismissal in favor of conversion. 579 B.R. 504 (Bankr. E.D. Wis. 2017). The court there did note the practical fact that the estate had "no funds to pay for [an] investigation" into unidentified potential fraudulent transfer claims or other assets in concluding that conversion and the resultant "administrative expenses that will almost certainly never be paid" would not be in the best interests of creditors or the estate. *Id.* at 512. But the court also emphasized that not only was there no concrete evidence of claims presented by the objecting creditor but that "vigorous investigative resources of others" has so far "yield[ed] no fresh assets." *Id.* The court warned that a motion to convert should not be "used as a pretext for a fishing expedition, especially when the lake looks so barren." *Id.* In contrast, here the objecting party – the Debtor himself – is the one simultaneously arguing the inconsistent assertions that the debtor/estate has a valuable claim but nevertheless a trustee will not pursue it.

assets to fund litigation of the Ogle County Case or his implication that the Ogle County Case claims are the only assets to be administered in a chapter 7 case, the Debtor has asserted in other motions and adversary proceedings that he has direct interests in non-exempt property of substantial value.  For example, in a still-pending adversary proceeding brought by the Debtor, he asserts that he directly owns a one-third interest in five properties worth $10,000,000. (*Hall v. Hall, et al.*, 20-96050). Specifically, the Debtor alleges in his adversary complaint that he is listed on title along with his two brothers and therefore has a direct ownership interest in properties described as (1) "Highway 251 Farm," 230 acres, $2,300,000 value; (2) "IPPEN Farm," 121 acres, $1,200,000; (3) "Perryville Farm," 92 acres, $920,000 (less $389,943 mortgage to Holcomb Bank); (4) "Grain Bin site," 10 acres with grain storage facility, (no value stated, but mortgage to Commodity Credit Corp. in original amount of $2,148,000); and (5) "Grandma's Farm," 298 acres, $2,980,000. The Debtor's amended Schedule A/B (ECF No. 158) also states that, at least as of the petition date, the Debtor owned a residence in Rochelle, IL, worth $300,000, a Michigan timeshare of unknown value, a Ford Explorer worth $10,000, a Ford F350 worth $40,000, a Ford F-150 worth $3,000, a Ford F-350 worth $2,000, a King trailer worth $2,000, a camper worth $17,000, a Polaris ATV worth $6,500, a 25% interest in CM Hall & Sons, LLC of unknown value, an interest in the Richard Hall, Sr. Trust of unknown value, and right to payment for a Syngenta corn seed class action of unknown value.  The court makes no finding at this time as to the existence or value of those asserted assets, but simply notes that the Debtor's assertions in response to

this Motion to Convert are inconsistent with his statements about his property interests made elsewhere. An independent chapter 7 trustee should have the opportunity to investigate.

Also, contrary to the Debtor's current suggestion that "substantially" all creditors would be protected outside bankruptcy if the case were dismissed because they have security interests in property exceeding the value of claims, the Debtor's Schedule E/F filed with his petition lists noncontingent, liquidated, undisputed unsecured claims of at least 18 creditors, including banks, lenders, utilities and medical care providers, totaling at least $996,273.98. He also scheduled an additional eight undisputed unsecured claims of "unknown" amount.

Indeed, in the Debtor's Amended Adversary Complaint to sell the five properties for which he alleges he is listed on title pursuant to section 363(h) of the Bankruptcy Code, the Debtor states:

> the Debtor has no means to pay any of his pre-petition creditors other than through the sale of the Properties pursuant to Section 363(h), and based on the current age, health and situation of the Debtor it is doubtful that the Debtor can have (and presently does not have) any source of revenue or income other than through the sale of the Properties pursuant to Section 363(h). In short, without the sale of the Properties pursuant to Section 363(h), the Debtor will remain a pauper, may become homeless (he is being dispossessed of his principal residence), will have no funds for his seniority and none of the creditors of the Debtor's estate will be paid -- to the detriment of the Debtor and these creditors.

(Adv. No. 20-96050, ECF No. 22 at 6-7.) Thus, by the Debtor's own admission, creditors will be better off if a chapter 7 trustee can liquidate at least the parcels for which the Debtor has a direct interest, regardless of the viability or value of the

claims asserted in the Ogle County Case.  At least some creditors not involved in the Ogle County Case, as well as the U.S. Trustee, support conversion to chapter 7, suggesting that a continued bankruptcy case will be more than just a two-party dispute between the Debtor and his brothers. Creditors deserve to have an independent chapter 7 trustee review the Debtor's assets and liabilities and the Debtor will have whatever protections and rights the Bankruptcy Code gives him as a debtor.

## CONCLUSION

Accordingly, the U.S. Trustee's Motion to Convert the case will be granted and the case converted to chapter 7. A separate order will be entered giving effect to the determinations reached herein.

DATE: July 6, 2022               ENTER:

_____

Thomas M. Lynch
United States Bankruptcy Judge